757 So.2d 610 (2000)
Angel L. LORIE, Jr., Diversified Capital Resources, Inc., Global Management Securities, Ltd., Global Assets Holdings, Ltd., Global Financial Services, S.L., GFS (Bahamas), Ltd., and Heathcoat Limited, Appellants,
v.
C.L.N., S.G.C., S.A., et al., Appellees.
No. 3D99-2229.
District Court of Appeal of Florida, Third District.
May 17, 2000.
Hall, David & Joseph and Allan A. Joseph, Miami, for appellants.
Rodriguez & Angelo and Paulino A. Nunez, Jr., Miami, for appellees.
*611 Before LEVY, FLETCHER, and RAMIREZ, JJ.
FLETCHER, Judge.
The appellants [collectively the Lories] appeal from a non-final order discharging an injunction bond, denying the Lories' motion to recover proceeds from the injunction bond, and directing the bond proceeds to be returned to the plaintiffs [collectively the Calderons]. We reverse and remand for an evidentiary hearing to determine damages (if any) suffered by the Lories in the injunction action.
The Lories acted as international investment advisors and securities brokers to the Calderons, who are in the business of managing investment portfolios. The Lories rendered investment services regarding certain high-risk, potentially high-yield Regulation "S" securities. The Calderons transferred over $5 million dollars to the Lories for that purpose. After some of the stocks failed to perform as promised, and one of the Lories[1] defaulted on an agreement to repay certain of those losses, the Calderons filed a 16-count complaint alleging, among other things, securities fraud, RICO violations, and breach of contract. The Calderons obtained a temporary injunction (later extended and modified) and posted a required $250,000 bond. Following this court's affirmance of an appeal by the Lories challenging the propriety of the temporary injunction,[2] one of the Lories declared insolvency, and, based on this, the SEC waived payment of disgorgement.
The specific event leading to this dispute is the Calderons' filing of a voluntary dismissal on the (alleged) basis that continued expensive litigation would only result in their obtaining an uncollectible judgment. After the Calderons' voluntary dismissal the Lories moved for dissolution of the temporary injunction and for distribution to them of the bond proceeds, contending that, as all claims against them had been dismissed, they were entitled to recover damages caused to them by the injunction. The Calderons moved to recover the $250,000 bond, arguing their entitlement thereto on the basis, inter alia, that no adjudication on the merits had resulted from the voluntary dismissal. The trial court agreed with the Calderons' additional argument that this court's prior affirmance of the temporary injunction in Lorie v. Calderon [I] became the law of the case as to the propriety (lack of "wrongfulness") of the injunction. To the contrary, however, that affirmance determined only that a sufficient showing for issuance of the temporary injunction had been made by the Calderons at the time it was applied for. El Segundo Original Rey de la Pizza Cubana, Inc. v. Rey Pizza Corp., 682 So.2d 697 (Fla. 3d DCA 1996); Jones v. Sterile Products Corp., 658 So.2d 1099 (Fla. 5th DCA 1995); Morse Taxi & Baggage Transfer, Inc. v. Bal Harbour Village, 242 So.2d 177 (Fla. 3d DCA 1970). Indeed, the purpose of the bond requirement was to protect the Lories in the event it was later determined that the temporary injunction was wrongfully issued.[3]
As to the Calderons' "no adjudication" argument, if a voluntary dismissal automatically required the return of an injunction bond to a plaintiff, a defendant who was damaged by that temporary injunction would lose the bond's protection. A voluntary dismissal would inevitably become an escape route for those who obtain a temporary injunction, then later realize their case is going south.
At 91 A.L.R.2d 1312 § 2, it was noted:

*612 "As a general rule, the voluntary dismissal of a suit by the plaintiff, after obtaining an interlocutory injunction and giving a bond, when made without the consent of the defendant, is determinative of the controversy and is such a breach of the condition of the bond as to warrant a right of action upon it, the sureties being boundabsent a showing of connivance between the plaintiff and the defendanton the theory that they assume the hazard of the plaintiff's independently abandoning his suit at any time before final submission."
This court has followed the above general rule. See Colonial Press of Miami, Inc. v. Industrial Medicine Publ'g Co., 199 So.2d 494 (Fla. 3d DCA 1967).
We reverse the trial court's order and remand for a hearing to determine whether the Lories suffered any damages because of the restraints placed upon them by the temporary injunction, and the extent of the damages. If the court determines that the defendants have suffered such damages, they are recoverable out of the bond proceeds.
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] Diversified Capital Resources, Inc. All of the appellants are controlled by Angel L. Lorie, Jr.
[2] See Lorie v. Calderon [I], 21 Fla. L. Weekly D241, ___ So.2d ___, 1996 WL 23511 (Fla. 3d DCA 1996).
[3] If the Calderons' argument regarding law of the case were to be accepted, an appellate court's affirmance of a trial court's temporary injunction would eliminate the need for an injunction bond from that point on.